KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-5681
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0546-BEN |
|---|---|---|
| Plaintiff, | ) ) ) | DATE: July 7, 2008<br>TIME: 2:00 p.m. |
| v. | ) ) | **UNITED STATES' RESPONSE AND** |
| JESUS ORTIZ (1),<br>ARTURO MORENO (2), | ) ) ) | **OPPOSITION TO DEFENDANTS'<br>MOTIONS:** |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **1. FOR DISCOVERY (1,2);<br>2. SUPPRESS SUGGESTIVE<br>   IDENTIFICATION (2);<br>3. SUPPRESS EVIDENCE (2);<br>4. DISMISS INDICTMENT DUE TO<br>   IMPROPER GRAND JURY<br>   INSTRUCTION (2); AND<br>5. FOR LEAVE TO FILE FURTHER<br>   MOTIONS (1,2)**<br><br>**TOGETHER WITH THE ATTACHED<br>STATEMENT OF FACTS, MEMORANDUM<br>OF POINTS AND AUTHORITIES, AND<br>GOVERNMENT'S MOTION FOR<br>RECIPROCAL DISCOVERY** |

COMES NOW, the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant U.S. Attorney, and hereby files its Response and Opposition to defendants' above-referenced motions. Said response is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities along with the Government's motion for reciprocal discovery.

//

//

**I.**

**STATEMENT OF THE CASE**

On February 27, 2008, a federal grand jury returned a four-count Indictment charging Defendants Jesus Ortiz ("Ortiz") and Arturo Moreno ("Moreno"), with bringing in illegal aliens for financial gain and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 (Counts One and Three); and bringing in illegal aliens without presentation and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) (Counts Two and Four).

On February 28, 2008, the defendants were arraigned on the Indictment and entered pleas of not guilty. The motion hearing originally scheduled for April 18, 2008, has been continued until July 7, 2008 at 2:00 p.m.

**II**

**STATEMENT OF THE FACTS**

**A.   INCIDENT**

On February 13, 2008, at approximately 9:00 p.m., Jesus Ortiz, entered the United States at the Calexico, California East Port of Entry as the driver and sole occupant of a 1999 Chrysler Sebring. During primary inspection, Ortiz stated he was a United States citizen and presented a California driver's license as identification. Ortiz told U.S. Border Protection Officer (CBPO) M. Salazar that he was not bringing anything into the United States. Ortiz' name was queried in the TECS record system and came back negative. Ortiz told Officer Salazar that he had been in Mexico visiting his grandmother. Officer Salazar noticed the car had only crossed one time before. Ortiz stated that he had owned the car for five years. Officer Salazar asked Ortiz if he crossed the border in the car frequently, and Ortiz said that he did. Based on this information, Officer Salazar referred Ortiz and the car to secondary inspection.

When Officer Salazar placed the referral slip on the windshield of the car, he told Ortiz to drive to the secondary lot. Officer Salazar asked Ortiz if he knew where the lot was. Ortiz said, "yes, straight ahead." Officer Salazar watched as Ortiz drove toward the secondary lot. As Ortiz got closer to the entrance of the secondary lot, he quickly veered the car northbound and "ran the port." Officer Salazar

tried to contact someone in the secondary lot to stop the car but was unavailable to reach anyone in time.

The Calexico Police Department was called to assist in locating the car. A description of the car was transmitted over police radio. About 15 minutes later, police officers located car near Ortiz' Calexico residence, with Ortiz driving and Arturo Moreno as a passenger. There were two other passengers riding in the back seat of the car. Ortiz parked the car in his driveway. All four occupants were removed from the car and taken back to the port of entry.

Ortiz was later identified by Officer Salazar as the driver of the car that fled the port of entry.

### B.    DEFENDANT'S POST-ARREST STATEMENT

On February 14, 2008, at approximately 4:14 a.m., Ortiz was arrested and later advised of his Miranda rights. Ortiz stated he understood his rights and agreed to answer questions without an attorney being present.

> Ortiz stated he went to Mexicali, Mexico, to make a reservation and claimed he was traveling alone. That when he arrived at the port of entry, the primary officer questioned him and referred him to secondary. That on his way to secondary, he decided to bypass secondary. That he drove and picked up his friend, Moreno. At Moreno's house then drove to a McDonald's restaurant in Calexico. That upon arrival the restaurant, Moreno was approached by two individuals who asked for a ride to Heber, California. That he and Moreno agreed to give them a ride. That instead of going into the restaurant, they drove the individuals to Ortiz' home where they were apprehended.

At approximately 5:45 a.m., Officer L. Casillas placed Moreno under arrest and advised him of his Miranda rights. Moreno stated he understood his rights but invoked.

### C.    MATERIAL WITNESS STATEMENTS

#### 1.    Material Witness Erik Esquivel-Prado

Material Witness Erik Esquivel-Prado, in a videotaped interview, stated among other things that:

> That he is a native and citizen of Mexico with no legal right or document to enter into, pass through, or remain in the United States. That he made arrangements with two females, one named "Bertha." That he was going to pay approximately $3,000 to $4,000 to be smuggled into the United States. That his final destination was Sacramento, California to seek employment.
>
> That as they entered the port of entry, they heard voices speaking in English, then the car accelerated at a high rate of speed, and appeared to briefly lose control.

Esquivel was presented with two photo line-ups, #1 and #2. On photo line-up #1, Esquivel corrected identified photo #1 as the passenger. On photo line-up #2, Esquivel correctly identified photo #4 as the driver and the person who placed him in the trunk of the car in Mexico prior to their arrival at the port of entry. Esquivel identified Moreno as being present when he was removed from the trunk of the car. Esquivel stated that both Ortiz and Moreno instructed he and the other material witness to tell the officers that they were picked up at the McDonald's restaurant and that they had asked for a ride to Heber.

### 2. Material Witness Veronica Perez-Castilleja

Material Witness Veronica Perez-Castilleja, in a videotaped interview, stated among other things that:

> That she is a native and citizen of Mexico with no legal right or document to enter into, pass through, or remain in the United States. That she made arrangements with two females, one named "Bertha." That she was going to pay approximately $3,000 to $4,000 to be smuggled into the United States. That his final destination was Sacramento, California to seek employment.

Perez was presented with two photo line-ups, #1 and #2. On photo line-up #1, Perez corrected identified photo #5 as the driver, and on photo line-up #2, Perez correctly identified photo #3 as the Passenger. Perez identified Ortiz as the person who placed him in the trunk of the car in Mexico prior to their arrival at the port of entry. Perez identified Moreno as being present when he was removed from the trunk of the car. Perez stated that Ortiz and Moreno told her and Esquivel that the police were coming and instructed them to tell the officers that they were picked up at the McDonald's restaurant and that they had asked for a ride to Heber.

## III.

## ARGUMENT

### A. COMPEL DISCOVERY

The Government has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government anticipates that all discovery issues can be resolved amicably and informally, and has addressed the defendant's specific requests below:

**(1) Brady Material.** The Government has and will continue to perform its duty under Brady to disclose material exculpatory information or evidence favorable to the defendants when such evidence is material to guilt or punishment. The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976). "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery. See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over. See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).

Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(2) Any Proposed Rule 404(b) Evidence.** The Government will provide the defendants with any information regarding the defendants' known prior criminal offenses. The Government will disclose in sufficient time advance of trial, the general nature of any "other bad acts" evidence that the

Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b). To the extent possible, the Government will provide the Rule 404(b) evidence to the defendants within two weeks prior to trial. The Government will also provide notice of all impeachment evidence by prior criminal convictions as required by Fed. R. Evid. 609.

**(3) Request for Preservation of Evidence.** The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The United States will make every effort to preserve evidence it deems to be relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the defendant. See Illinois v. Fisher, _ U.S._ , 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. RIVERA-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(4) Defendant's Statements.** The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to the defendants the substance of their oral statements and their written statements. The Government has produced all of the defendants' statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to the defendants.

The Government has no objection to the preservation of the handwritten notes taken by any of the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing the defendants with a copy of the rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes

have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to the defendants that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to the defendants' guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3rd Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to the defendants.

    **(5) Tangible Objects.** As previously discussed, the Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing the defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects that is within its possession, custody, or control, and that is either material to the preparation of the defendants' defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to the defendants. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

    **(6) Expert Witnesses.** The Government will comply with Rule 16(a)(1)(G) and provide defendants with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. This shall

include the expert witnesses' qualifications, the expert witnesses opinions, and the bases and reasons for those opinions.

**(7) Witness Addresses.**  The Government will provide the defendants with the reports containing the names of the agents involved in the apprehension and interviews of the defendants. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. , 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992), citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).  Nevertheless, the Government will provide the defendants with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)©." United States v. Yung, 97 F. Supp. 2d 24, 36 (D. D.C. 2000), quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980).

**(8) Jencks Act Material.**  The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e).  While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(9) Informants and Cooperating Witnesses.** At this time, the Government is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's

1 testimony is crucial to the defense. <u>Roviaro v. United States</u>, 353 U.S. 53, 59 (1957). If there is a
2 confidential informant involved in this case, the Court may, in some circumstances, be required to
3 conduct an in-chambers inspection to determine whether disclosure of the informant's identity is
4 required under <u>Roviaro</u>. See <u>United States v. Ramirez-Rangel</u>, 103 F.3d 1501, 1508 (9th Cir. 1997).
5 If the Government determines that there is a confidential informant somehow involved in this case, the
6 Government will either disclose the identity of the informant or submit the informant's identity to the
7 Court for an in-chambers inspection. The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u>
8 to provide material evidence that could be used to impeach Government witnesses.

9      **(10) <u>Specific Request to View A-Files of Material Witnesses</u>.** As previously discussed, the
10 Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could
11 be used to impeach Government witnesses.

12      **(11) <u>Residual Request</u>.** The Government will comply with all of its discovery obligations, but
13 objects to the broad and unspecified nature of defendants' residual discovery request.

14      **B.**     **SUPPRESS IMPERMISSIBLY SUGGESTIVE IDENTIFICATION**

15      Moreno seems to suggest that the material witnesses' out-of-court identification of him as the
16 passenger in the car he rode in on February 13, 2008 was "impermissibly suggestive and
17 unconstitutional." [Def. Moreno Mot. At 7.] The identification procedure claimed to be "impermissibly
18 suggestive " was that of the material witnesses looking at two photo displays.

19      A two-part inquiry governs whether an in-court identification will be admissible. First, the trial
20 court must determine whether the defendant has been suggestively exposed to the witness. <u>United States</u>
21 <u>v. Carbajal</u>, 956 F.2d 924, 929 (9th Cir. 1992) (citing <u>Manson v. Brathwaite</u>, 432 U.S. 98, 109-114
22 (1977)). If so, the reliability of the identification is analyzed under a five-factor test, including 1) the
23 opportunity to view the criminal; 2) the witness' degree of attention; 3) the accuracy of the witness'
24 prior description; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the
25 interval between the crime and the confrontation. Id. Absent a suggestive exposure, the inquiry ends
26 and the identification is admissible. <u>United States v. Domina</u>, 784 F.2d 1361, 1370 (9th Cir. 1986)
27 (finding absence of impermissible suggestion to obviate inquiry into taint). Whether an exposure is
28

1 impermissibly suggestive is determined from the totality of circumstances. United States v. Matta-
2 Ballesteros, 71 F.3d 754,769 (9th Cir. 1996).

3 The Government will provide Moreno with the requested copy of the photographic six-pack
4 used in this case. As there is no confrontation at this time, Moreno's motion to suppress is premature.
5 //
6 //

7 **C.  SUPPRESS EVIDENCE**

8 Moreno contends that the stop of Ortiz' car performed by the Calexico Police Department
9 February 13, 2008, violated the Fourth Amendment, and any evidence obtained must be suppressed.
10 [Def. Moreno Mot. at 8.] As set forth below, his motion is meritless and should be denied.

11 The Fourth Amendment allows officers to perform "brief investigatory stops of persons or
12 vehicles" when "the officer's action is supported by reasonable suspicion to believe that criminal
13 activity may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations omitted); Terry v.
14 Ohio, 392 U.S. 1 (1968). "A temporary detention or seizure of a person is 'justifiable under the Fourth
15 Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.'"
16 United States v. Woods, 720 F.2d 1022, 1026 (9th Cir. 1983) quoting Florida v. Royer, 460 U.S. 491,
17 498 (1983). In forming reasonable suspicion, the officer is entitled to draw upon personal experience
18 and specialized training and to make inferences from and deductions about the cumulative information
19 available to him that "might well elude an untrained person." Arvizu, 534 U.S. at 273 (citation omitted).
20 "The process does not deal with hard certainties, but with probabilities" and "commonsense conclusions
21 about human behavior." United States v. Cortez, 449 U.S. 411, 418 (1981). Reasonable suspicion is
22 simply "a particularized and objective basis for suspecting the person stopped of criminal activity."
23 Ornelas v. United States, 517 U.S. 690, 696 (1996) (citation omitted). It is more than a "hunch" and less
24 than "probable cause." Arvizu, 534 U.S. at 274.

25 The inquiry is whether "a police officer observes unusual conduct which leads him to reasonably
26 conclude in light of his experience that criminal activity may be afoot." United States v. $109,179 in
27 U.S. Currency, 228 F.3d 1080, 1084 (9th Cir. 2000) quoting Terry v. Ohio, 392 U.S. 1, 30 (1968). If
28 police have reasonable suspicion, a Terry stop may also be used to investigate a completed felony, not

1  just an ongoing one or in anticipation of a crime. United States v. Grigg, 498 F.3d 1070, 1074-5 (9th
2  Cir. 2007).

3     The Calexico Police Department had reasonable suspicion to believe that the car driven by Ortiz
4  was the one that had just run the Calexico Port of Entry. The Calexico police officers received a radio
5  transmission of a car that had just absconded from the port of entry. The car driven by Ortiz matched
6  the description of the car given by the border patrol agents.

7     "Given that [the police officers] had reasonable suspicion to make a Terry stop, Ortiz could be
8  removed from the car and taken back to the border patrol station to be asked questions reasonably
9  related in scope to the justification for their initiation." United States v. Cervantes-Flores, 421 F.3d 825,
10 830 (9th Cir. 2005) (citation omitted) (upholding admission of pre-Miranda statements made during
11 Terry stop); United States v. Butler, 249 F.3d 1094, 1098 (9th Cir. 2001) ("The case books are full of
12 scenarios in which a person is detained by law enforcement officers, is not free to go, but is not 'in
13 custody' for Miranda purposes.").

14    For all of the foregoing reasons, any evidence seized is admissible and the Court should deny
15 Moreno's motion to suppress for an alleged violation of the Fourth Amendment.

16    **D.    DISMISS THE INDICTMENT**

17    It bears noting that the Hon. Barry Ted Moskowitz and the Hon. John A. Houston, both recently
18 issued a detailed Order analyzing and rejecting all of the arguments Defendant raises here. See Order
19 of Judge Moskowitz, attached as Appendix 3 and Order of Judge Houston attached as Appendix 4. The
20 United States adopts the reasoning in this Court's previous order and requests that the Court reach the
21 same result. Attached as Appendix 1 is the "Partial Transcript" of the Grand Jury Proceedings.
22 Attached as Appendix 2 is a redacted "Supplemental Transcript" which records the relevant portions
23 of the voir dire proceedings.

24    Other courts of this district have repeatedly rejected the arguments raised by Defendant before,
25 and we ask the Court to do so again.

26    **E.    LEAVE TO FILE FURTHER MOTIONS**

27
28

The United States does not oppose the defendants' request to file further motions if they are based on new discovery or other information not available to the defendants at the time of this motion hearing.

### F. GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

#### 1. Rule 16(b)

The defendants have invoked Federal Rule of Criminal Procedure 16 in their motions for discovery. The Government has voluntarily complied with the requirements of Federal Rule of Criminal Procedure 16(a). Thus, the 16(b) provision of that rule, pertinent portions of which are cited below is applicable:

The Government hereby requests the defendants permit the Government to inspect, copy, and photograph any and all books, papers, documents, photographs, tangible objects, or make copies of portions thereof, which are within the possession, custody, or control of the defendants and which he intends to introduce as evidence in their case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession or control of the defendants, which they intend to introduce as evidence-in-chief at the trial or which were prepared by a witness whom the defendants intend to call as a witness. The Government also requests that the Court make such orders as it deems necessary under Rules 16(d)(1) and (2) to insure that the Government receives the discovery to which it is entitled.

#### 2. Rule 26.2

Federal Rule of Criminal Procedure 26.2 requires the production of prior statements of all witnesses, except the defendant. The new rule thus provides for the reciprocal production of Jencks statements. The Government hereby requests that the defendant be ordered to supply all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. This order should include any form these statements are memorialized in, including but not limited to, tape recordings, handwritten or typed notes, and reports.

//

1  //
2  //
3  //
4  //
5  //
6  //
7  //

## IV.

## CONCLUSION

For the foregoing reasons, the defendants' motions should be denied.

DATED: June 30, 2008

                                          Respectfully Submitted,

                                          KAREN P. HEWITT
                                          United States Attorney

                                          s/ Randy K. Jones
                                          RANDY K. JONES
                                          Assistant United States Attorney
                                          Attorneys for Plaintiff
                                          United States of America
                                          Email: randy.jones2@usdoj.gov

```
 1  KAREN P. HEWITT
    United States Attorney
 2  RANDY K. JONES
    Assistant U.S. Attorney
 3  California State Bar No. 141711
    Federal Office Building
 4  880 Front Street, Room 6293
    San Diego, California  92101-8893
 5  Telephone: (619) 557-5684; (619) 557-7381
    randy.jones2@usdoj.gov
 6
    Attorneys for Plaintiff
 7  United States of America
```

8                       UNITED STATES DISTRICT COURT

9                      SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JESUS ORTIZ (1), )<br>ARTURO MORENO (2), )<br>)<br>Defendants. )<br>_____) | Case No. 08CR0546-BEN<br><br><br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

     I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

     I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendants' Motions to Compel Discovery, Suppress Impermissibly Suggestive Identification, Suppress Evidence, Dismiss the Indictment and for Leave to File Further Motions Together with Statement of Facts and Memorandum of Points and Authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

     1.  Knut S. Johnson     E-mail: Knut@knutjohnson.com
     2.  Stephen D. Demik    E-mail: Stephen_demik@fd.org

     I declare under penalty of perjury that the foregoing is true and correct.

     Executed on June 30, 2008

                                                       s/ Randy K. Jones
                                                       RANDY K. JONES